## Case No. 11,638.

### In re REED.

[2 N. B. R. 9 (Quarto, 2).] [1]

Circuit Court, N. D. Ohio. 1868.

BANKRUPTCY—QUESTIONS ARISING IN PROGRESS OF CASE—APPEAL.—REVIEW.

An appeal is not the proper method to take a question arising in the progress of a case in bankruptcy into the circuit court; it should be by a petition addressed to the circuit court, stating clearly and specifically the point or question decided in the district court; that the petitioner is aggrieved thereby, and praying the circuit court to review and reverse the decision of the court below.

[Cited in Littlefield v. Delaware & H. Canal Co., Case No. 8,400.]

This case came into the circuit court upon an appeal from the district court. [Case unreported.] The district court had decided that the opposing creditor could not properly file objections to the final discharge of the bankrupt, until he had proven his debt. The question is now upon a motion to dismiss the appeal.

## Case No. 11,639.

### In re REED.

[12 N. B. R. 390; 1 N. Y. Wkly. Dig. 100.] [2]

District Court, D. Massachusetts. 1875.

BANKRUPTCY—BOOKS OF ACCOUNT—INVOICE-BOOK.

A retail dealer in groceries who keeps no invoice-book. but keeps all his invoice-bills carefully together. so that a complete account of all goods received by him can be made out from

[1] [Reprinted by permission.]

[2] [Reprinted from 12 N. B. R. 390, by permission. 7 N. Y. Wkly. Dig. 100, contains only a partial report.]

them (the other customary books being also kept), keeps proper books of account. The question of book-keeping is a question of fact in each case.

[Cited in Re Graves, 24 Fed. 554.]

[Cited in Re Howard, 59 Vt. 594, 10 Atl. 719.]

[This was a petition for discharge, by J. K. P. Reed, a bankrupt.]

J. L. Nichols and George W. Searle, for objecting creditors.

L. B. Thompson and E. T. Luce, for bankrupt.

## Case No. 11,640.

### In re REED.

[21 Vt. 635; 3 N. Y. Leg. Obs. 262.]

District Court, D. Vermont. Oct. Term, 1844.

BANKRUPTCY—ATTACHMENT—LIEN — DISCHARGE—GIVING QUITCLAIM DEED.

1. An attachment of property upon mesne process, if perfected by judgment and levy, is a lien, which is protected by the bankrupt act [of 1841 (5 Stat. 440)]; and it is immaterial, whether the judgment is recovered before, pending, or after, the proceedings in bankruptcy.

2. And where the property of a bankrupt, both real and personal. was subject to an attachment upon mesne process at the time he filed his petition to be declared a bankrupt, it was *held* no objection to his discharge. that he consented, that the personal property might be sold upon the mesne process, under the stat-

ute of this state, or that he confessed judgment in the suit,—it appearing that the debt was bona fide,—or that he executed to the creditor a quitclaim deed of his interest in the real estate,—it appearing, that the real estate was previously incumbered by mortgage to nearly its entire value.

This was an application by Timothy Reed, a bankrupt, for a discharge.

PRENTISS, District Judge. Three objections are interposed to the allowance of a discharge to the bankrupt. The first alleges a fraudulent concealment of property, by wilfully omitting to insert in his schedule several articles of personal property, particularly enumerated and specified. This objection requires no farther notice, than to say, that it is not supported by the proofs.

The second and third objections may be considered together; the one alleging various fraudulent conveyances and transfers, without any adequate or valid consideration, to certain individuals named in the objections, of real and personal estate to a large amount, within the second clause of the second section of the bankrupt act; the other alleging the giving of fraudulent preferences to the same persons, by the conveyances and transfers of the same property, within the first clause of the same section of the act.

It should be observed here, for the sake of proper discrimination and distinctness, that much of the testimony taken in the case, which, by the by, is quite voluminous and presents a variety of transactions, has no direct application to any of the questions arising out of either of the objections. The inquiry, by the rules and practice of the court. is limited to such transactions, as are embraced in the objections, and to them the testimony should. regularly and properly, have been confined. At any rate, all beyond, if not wholly irrelevant to the matters in issue. cannot be considered as having any other purpose or effect, than the general one, to show the state and condition of the bankrupt's affairs at the time the conveyances and transfers were made, which form the stated grounds of objection.

Passing by, then, such of the testimony as appears to have no direct bearing upon the objections. the material facts, necessary to be adverted to, are these: On the 10th of January, 1842, after the bankrupt law was passed, but before it went into operation, the several persons mentioned in the objections, being creditors of the bankrupt, instituted suits on their respective debts and attached all the real and personal estate of the bankrupt, being the same estate alleged in the objections to have been conveyed and transferred to them. The suits were instituted for the joint benefit of the several attaching creditors. under an understanding, that the avails of the property attached should be divided among them in proportion to their respective debts; and without, as some of the creditors who have been examined as witnesses say, the procurement of the bankrupt, or any concert whatever with him. The personal property, thus attached, consisted of horses, cattle, sheep, hay, grain and farming utensils, and was sold by the attaching officer at public auction, after being regularly advertised, on the twenty seventh of January, before judgment, with the consent of the bankrupt and the creditors, in writing; and the avails of the property so sold were afterwards apportioned among the several creditors, according to the understanding existing between them, judgments being obtained for the debts in suit by confession. The bankrupt, on application of the creditors, quitclaimed to them all his interest in the real estate attached, consisting of an equity of redemption, worth, according to the estimate made, about $186.

The testimony is very full to show, that the attaching creditors were bona fide creditors to an amount greatly exceeding both the proceeds of the personal property and the value of the interest in the real estate; and, from the facts proved, there can be no doubt of the integrity or fairness of the transactions, considered independent of the bankrupt law, although the creditors thereby obtained a preference. Whether the transactions constitute such a preference as the law forbids is the question which remains to be considered.

As the bankrupt, at the time of the attachments, was deeply insolvent, his real estate being incumbered by mortgages to a heavy amount. and owing, as he did. other debts far beyond his means of payment, the case would be a clear one against him, if there were any evidence of collusion between him and the attaching creditors, or such collusion could be fairly inferred from the transactions themselves. But instead of there being any such evidence, or any such inference being allowable, the testimony shows, that the attachments were wholly and exclusively at the instance of the creditors, and that the proceeding on their part was really and altogether adverse. We have only to consider, then, the nature and extent of the right acquired by the creditors by virtue of the attachments, and the effect of the bankrupt's consent to the sale of the personal property before judgment, and of his quitclaim of his interest in the real estate, connected with the fact of his confessions of judgment in the suits.

I have no disposition to enter into any farther discussion of the question, whether an attachment is a lien within the saving clause of the bankrupt act. That question has been already sufficiently discussed by the courts of the United States, here and elsewhere, and must be considered as settled, in this district at least, by the cases of Downer v. Brackett [Case No. 4,043], Haughton v. Eustis [Id. 6,224], and In re Rowell [Id. 12,095]. These decisions have been followed by a decision of the supreme court of this state, to the

same effect, made in December last. but not yet reported, and by a corresponding determination of the supreme court of New Hampshire in the case of Kittredge v. Warren [14 N. H. 509]. The concurrence, in these two states. of their highest courts, upon the same question, composed, as the court in each state is, of judges of large experience, sound judicial discretion, and acknowledged learning and ability, whose opinions are entitled to great weight upon any question, and especially upon one depending mainly upon local law, such as the nature and effect of an attachment, would seem to be confirmation, quite sufficient, of the decision first made upon the question in this court and afterwards affirmed in the circuit court. Still, however unnecessary or uncalled for it may be, I will advert in a very few words to one or two isolated points, intending by no means to go into the general argument.

It is said. that an attachment is a conditional, contingent lien, dependent on the judgment in the action, and, being thus conditional and contingent, it is not a lien within the meaning of the bankrupt law. It is true, that an attachment is dependent for its final effect on the result of the suit and other proceedings to be had; and so far. and in that sense, the lien is conditional and contingent. But it is not on that account any the less an absolute and fixed lien. By the term "absolute," I do not mean that the lien is unconditional, but that it is complete and perfect, as a lien, during its continuance, as much so as a lien by judgment, or any other lien. It is created by the attachment, and derives its force and efficacy from the attachment. It exists anterior to. distinct from, and independent of the judgment, and is for the express and specific purpose of giving to the creditor a security for his debt in advance of the judgment. A judgment, to be sure, is necessary, to enable the creditor to avail himself of the benefit of the lien. and so is an execution; but the lien is created and exists anterior to either. and is perfect and valid as a lien or security ab initio, and must remain so until the creditor has failed to obtain judgment. or to levy his execution within the time prescribed by law, or the judgment is satisfied by payment. No lien whatever upon property is an absolute indefeasible interest in the property, but all liens are in their nature defeasible. A mortgage is a conditional lien, or security, defeasible by payment. So a lien by bottomry is in the highest sense conditional and contingent. being dependent for its effect on the return of the ship. · If the ship return, the lien becomes effectual; if the ship fail to return, the lien is ineffectual. It is admitted by all. that the lien by bottomry is within the saving provision of the bankrupt act; and yet it is not only conditional, but requires. as a mortgage also does. the aid of a judicial decree and process to enforce it.

In Re Cook [Case No. 3,152], a distinction is assumed to exist between the case of a lien by attachment before judgment, and the case of a lien by attachment after judgment. It is there held, that, where judgment has been obtained before the commencement of the proceedings in bankruptcy, the lien is valid and wholly unaffected by the bankruptcy. But how can that be, unless the lien, as a lien, is saved by the act; and if it be saved, it is quite immaterial, whether the judgment is recovered before, pending, or after the proceedings in bankruptcy. It seems to be supposed, and, indeed, is distinctly asserted by the court, that by the judgment the nature of the lien is altered and changed, so that the right of the creditor under the attachment, from being conditional and contingent, becomes, by operation of the judgment, fixed and absolute; that is, as I understand it, unconditional, certain and settled. Now I am unable to see, why the lien is not conditional and contingent, as well after judgment, as before. The judgment, it is true, ascertains the debt. but the judgment is only one step in the proceedings. The lien is still dependent, for ultimate effect, on another and farther condition. The execution must be taken out and levied upon the property, · if personal estate, within thirty days, and if real estate, within five calendar months, after judgment; and unless it be so levied, the attachment is dissolved. It can make no difference, therefore, that judgment has been recovered, if the execution is not levied before the filing of the petition in bankruptcy; for in such case the execution upon the judgment may be set aside, when the certificate of discharge is granted. on the application of the bankrupt or the assignee. unless the attachment. of itself, irrespective of the judgment. is held to be a lien. which is saved and protected by the act. If the attachment be not such a lien, then nothing short of a levy of the execution on the property attached, before the filing of the petition in bankruptcy, would give the creditor any absolute or valid right, and the result would be. that the attachment is of no efficacy whatever, since a levy of execution, without a previous attachment. would be just as beneficial to the creditor. as a levy with.

But all the reasoning founded on the assumed conditional. contingent nature of the lien by attachment. as well as. upon the property being merely in the custody of the law, is fully answered. as it appears to me. by the observations of the court in the case of Audley v. Halsey. Cro. Car. 148. In that case it was held. that goods taken upon an extent sued out upon a statute staple, before the bankruptcy of the debtor, though the goods are not delivered to the creditor by the sheriff upon a liberate until after the bankruptcy, may be held by the creditor against the commissioners under the bank-

ruptcy. The court said, that the goods, being extended, are quasi in custodia legis, so as the debtor has not any power to give, sell, or dispose of them; and although by the extent the creditor has no absolute interest or property in them, until the delivery by the liberate on appraisement, and at the return of the writ may refuse them for being overvalued, yet that is for the advantage of the creditor; for they are as goods gaged or distrained, which cannot be forfeited by outlawry, or, taken in execution from the party who has them in gage, or by way of distress, without payment of the money; for the goods are bound by the teste of the writ of extent or execution sued.

Now is not most of what is said in the case just cited applicable to an attachment? By the extent upon a statute staple the goods are seized into the hands of the king, or, in other words, taken into the custody of the law, and remain in that state until there is another award of the court, viz., a liberate, which is a conditional writ, ordering the sheriff to cause the goods to be appraised, and to deliver them to the creditor, if he will accept them on the valuation, which he may do, or not, at his election. The extent has no more absolute operation than an attachment, and each is dependent for final effect on after proceedings. Under both, the goods seized are a pledge or security for the debt, equally perfect and valid in the first instance, and the after proceedings have relation to the first seizure, so as to overreach and avoid all intermediate claims by others under the debtor.

It has been observed by a learned judge, by way of apology for the absence of English authorities on the subject, that since the statute 21 Jac. I, c. 19, the question as to the effect of an attachment could not arise in England. That is true, because it was provided by that statute, and so continued until a very recent and very material modification of the enactment, that creditors having their debts secured by judgment, statute or recognizance, or having made an attachment according to the custom of London, where no execution or extent is served or executed before the debtor became bankrupt, shall not be relieved for more than a rateable part of their just debt. But how did the law stand before that statute? That is a material inquiry. It has been supposed, that there is no authority to answer this inquiry; but that seems to be a mistake. In the case of Audley v. Halsey, already cited, the court referred to the provision in the statute 21 Jac. I., and said that the provision proved, that after the bankrupt act of the 13 Eliz. c. 7, until the statute of James, the commissioners in bankruptcy had no power to meddle with goods taken upon a foreign attachment; yet, added the court, the goods are but as a pledge to draw the party to answer, and if he appear, the foreign attachment is discharged. What was this but

saying, that, independent of the provision of the statute of James, the right acquired by a creditor under a foreign attachment, though conditional and contingent in the fullest sense, would remain valid and effectual, notwithstanding the bankruptcy of the defendant. Now it is worthy of special notice, that our bankrupt act is not only without any such provision as that of the statute of 21 Jac. I., but expressly and positively saves and preserves all liens, mortgages, and other securities on property, real or personal, which are valid by the laws of the respective states.

But it is said, that, where the bankruptcy of the debtor intervenes after an attachment, and while the suit is pending, followed by a certificate of discharge, no judgment can be recovered in the suit, so as to give effect to the lien; because the act makes the certificate of discharge a discharge of the debt. This, in my opinion, to use a scholastic phrase, is begging the question. Whether the certificate is a bar to a recovery of judgment depends upon the decision of a previous question, whether the attachment is a lien, or security, valid by the laws of the state, and so within the saving provision of the act? If it be such a lien, or security, then, by the very words of the provision, the certificate of discharge cannot in any way annul, destroy, or impair it. It is excepted from the operation of the certificate, like a mortgage, or any other lien or security, which is saved; and a judgment, or whatever else may be necessary to give effect to the lien, may be had of course.

The act declares, in general terms, that the discharge and certificate shall "be deemed a full and complete discharge of all debts, contracts, and other engagements of the bankrupt, which are proveable under the act, and shall and may be pleaded as a full and complete bar to all suits brought in any court of judicature whatever." It is to be observed, that the act makes the certificate of discharge, not a discharge of the person of the bankrupt merely, but a discharge of the debt itself, and declares, that it may be pleaded as a full and complete bar to all suits whatever. Upon the words of the act there is no foundation for a distinction between a suit in rem and a suit in personam. Taking the provision by itself, and giving it a literal effect, there could be no remedy, even upon a mortgage; for if the debt, which is the principal, is extinguished, or discharged, all remedy upon the mortgage, which is the incident, is discharged and gone also. But we are to look to all parts of the act, and give it such a construction, as the whole, taken together, appears to require. On recurring to other clauses, we find it provided, not only that the certificate of discharge shall not annul, destroy, or impair any lien, mortgage, or other security on property, but that it shall not extend to trust or fiduciary debts, or release or discharge any partner, joint contractor, in-

dorser, or surety, liable for the same debt. Thus, in these several particulars, the provision prescribing the general effect of the certificate of discharge is necessarily qualified and restrained by other distinct saving provisions of the act. It is admitted by all, as it must be, that the provision is so far qualified and restrained, that a judgment in an action in rem upon a mortgage, or in an action in personam upon a trust or fiduciary debt, though both debts are proveable under the act, may be recovered, notwithstanding the discharge and certificate; and why may it not be so in the case of a lien by attachment? The form of the proceeding, whether in rem or in personam, is immaterial; the substance is the thing to be regarded. If the whole object and operation of the judgment is merely to enforce the lien, and give the creditor the benefit of the property attached, and nothing more, the proceeding, though in form in personam, is in substance and effect a proceeding in rem.

But it is unnecessary to pursue the subject farther; for the whole matter, after all that may be said, lies within very narrow limits, and may be summed up in a very few words. If an attachment is a lien, valid by the laws of the state, and so excepted out of the bankrupt act, the act has no operation upon it. Existing under and by virtue of the state laws, and being unaffected by the bankrupt law, it must have such validity and effect, as the state laws give it; and the proceedings in the suit must necessarily be the same, quoad hoc, as though no bankruptcy had occurred, or no bankrupt law were in existence. On the other hand, if the attachment be not a lien within the saving clause of the act, then the decree of bankruptcy, ipso facto, avoids it in all cases whatever, including cases both of tort and contract, where the claim is not proveable under the act, as well as where it is; and the property attached, by force and from the time of the decree, before a certificate of discharge is or can be obtained, passes, freed from the attachment, with the other property of the bankrupt, to and vests in the assignee. We are inevitably driven to one or the other of these conclusions; for there is no middle ground, that can be taken and sustained, in my opinion, by any sound argument or just legal reasoning. The latter conclusion, I am quite sure, will never be adopted or held as the established law.

Considering, then, the attachment as valid and effectual to hold the property attached, the only question is, there being no collusion between the bankrupt and attaching creditor, is the case in any way affected by the consent of the bankrupt to the sale of the personal property before judgment, his quitclaim of his interest in the real estate, or his confessions of judgment in the suits? In England, as property cannot be taken before judgment, and an execution is the first process, by which it can be seized, the giving a warrant of attorney, without pressure, to a creditor, with power to issue immediate execution, if done in contemplation of bankruptcy, is held to be a fraudulent preference on the part of the debtor. Here a voluntary confession of judgment, under similar circumstances, without an adverse antecedent attachment, would undoubtedly have the same effect. But as property, here, may be taken by attachment before judgment, where it is so taken, as it was in this case, I think the principle does not apply.

And certainly, the voluntary consent to the sale of property attached, before judgment, ought not to be viewed in a more unfavorable light, than the voluntary confession of judgment, with the right to take the property attached immediately in execution. The property in the present case being bound by the attachments, it cannot be of any importance, whether it was sold under the attachments before judgment, or on execution, after the judgments were obtained. By the law of this state, goods and chattels attached on mesne process may be sold by the attaching officer, with the consent, in writing, of the debtor and the attaching creditors, before judgment, in the same manner that property may be sold on execution. Indeed the property in this case being of such a description, that it could not be kept without expense, the creditors might, under another provision of the state law, have compelled a sale of the property before judgment, against the will of the bankrupt. At any rate, as the sale was a regular, legally authorized proceeding, giving the creditors no undue advantage, or any greater right than they already possessed, and was beneficial to all parties, working no injury to any one, it is difficult to see, how the bankrupt's consent to it can, on any principle, any more than his confessions of judgment, affect his right to a discharge.

As to the quitclaim to the attaching creditors of all the real estate attached, it appears, as we have before seen, that the interest of the bankrupt in the estate consisted of an equity of redemption, worth at the most only $186. It may be very questionable, whether, the estate being incumbered to so large an amount, approaching so very near to its actual value, the equity of redemption could have been sold for any amount. But, however that may be, the creditors, by their attachments, had secured to themselves all the right and interest the bankrupt had in the estate; and if he had not quitclaimed his interest to them, they might have gone on and set it off upon execution. The quitclaim was given on application of the creditors, probably with a view of saving costs and expense; and by it the interest in the estate was transferred to them in the form of conveyances instead of being transferred, as it would or might have been, by levy and appraisement on writs of execution. The creditors obtained nothing more, than what they had a right to under their attachments; and what they obtained the bankrupt could not have

deprived them of, if he had been disposed to do so. I see nothing in this transaction, any more than in that of giving consent to the sale of the personal property, that amounts to a fraudulent preference on the part of the bankrupt; and the result of the whole is, that, none of the objections being sustained, they must be overruled and a discharge granted.