Rison, Assignee, etc. vs. Powell et al.

RISON, Assignee, etc., vs. POWELL et al.

28    424.
672   184.

BANKRUPTCY: *Jurisdiction of state courts in.*
Bill was brought in a state court, by an assignee in bankruptcy, to set aside conveyances of property alleged to have been fraudulently made by the bankrupt, prior to being adjudicated such. On plea to the jurisdiction of the state court: *Held*, that the state courts have concurrent jurisdiction of such causes with the national courts.

APPEAL from *Jefferson* Circuit Court.
Hon. HENRY B. MORSE, Circuit Judge.
*Watkins & Rose*, for appellants.
*Bell & Carlton*, for appellees.

SEARLE, J. This was an action in equity brought in the Jefferson circuit court, to the May term thereof, 1867, by the appellant. In his complaint, he alleges that John C. Ward & Co., being seized in fee of certain lands situated in Jefferson county, on the 24th of January, 1868, conveyed them, together with a large amount of personal property, to Jesse R. Powell, one of the appellees herein; that Ward & Co. were insol-vent or in contemplation of insolvency, and being largely in-debted to Powell, made these conveyances to him for the purpose of making him a preferred creditor; that Powell knew of their failing circumstances, and that the conveyances were made in fraud of the provisions of the act of congress,

entitled "an act to establish a uniform system of bankruptcy throughout the United States," approved March 2, 1867.

The appellant further alleges that on the 20th of April, 1868, certain creditors of Ward & Co., filed their petition in the United States district court for the eastern district of Arkansas, against the said Ward & Co., stating that they had committed acts of bankruptcy, among which especially were the conveyances to Powell; that on the 24th day of October, 1868, upon said petition, by the judgment of said district court, Ward & Co. were adjudged bankrupts, and that the appellant, by deeds of assignment from the register in bankruptcy, was made assignee of all the property, real and personal, of said Ward & Co., with all their deeds, books, etc. And the appellant prays that said conveyances to Powell be set aside and cancelled as having been made in fraud of bankrupts' creditors; that he be quieted in his title to the property against the claims of any and all the appellees, and that an account be taken, etc. The appellees answered and moved the court to dismiss the complaint for want of jurisdiction. The court sustained the motion and dismissed the complaint, and from this judgment this appeal was taken.

The question presented for determination is, Had the circuit court of Jefferson county jurisdiction of this cause?

We apprehend that the present constitution of the state does not change the jurisdiction of circuit courts. (Article VII, section 5.)   The circuit courts, then, have jurisdiction of "all civil cases not cognizable before justices of the peace."   Const. of 1836, art. VI, sec. 3 ; Gould's Digest, ch. 47, sec. 7.   It will not be disputed, therefore, that circuit courts, under the limitations above indicated, have jurisdiction ordinarily of cases where the title of property, real and personal, is in question.

But the inquiry suggested more especially for our consideration is much narrower, for the allegation upon which the ap-

pellant's case rests is, that "Ward & Co., were largely indebted to Powell, and made the conveyances to give him a preference over his other creditors," and, "therefore," they say "they were fraudulent under the provisions of the bankrupt law, and should be set aside." Now, neither by the common law nor by the statute laws of this state is a debtor prohibited from preferring a creditor when such preference is made in good faith. Only in the bankrupt law is such preference denied. It is, therefore, insisted by appellee's counsel that the state courts have no jurisdiction of this cause, because the title to the property in controversy is to be determined, not by the laws of this state, properly so-called, which allows debtors to prefer creditors when it is done in good faith (see *Doswell v. Adler et al.*, *ante*, p. 82), but by the provisions of the bankrupt law of congress, which makes such preference *ipso facto* fraudulent when the conveyance is made within certain prescribed limits previous to the institution of proceedings in bankruptcy. They also insist that the state courts have no jurisdiction, because the property belonging to an assignee in bankruptcy, as such, is exclusively under the control of the United States district court. The sole inquiry, thus narrowed, is as to whether or not a circuit court of the state has jurisdiction of an action brought by an assignee in bankruptcy to set aside and cancel conveyances of property for fraud solely under the bankrupt law of congress.

As to whether the title to property be derived through the laws of the United States or those of the state, cannot be a question of jurisdiction. This proposition gives us a rule of general application, and is not difficult, we think, of substantiation. As above intimated, the circuit courts of this state, with certain exceptions in favor of courts of justices of the peace, have jurisdiction ordinarily of controversies regarding the title to property, both real and personal, and they will pass upon the

validity of the titles thereto, whether acquired by or under the laws of the United States or those of the state. Indeed, as regards real property, all the titles thereto come in the first instance by the laws of the United States. In *Ashley, Ex'r, etc., vs. Cunningham,* 13 Ark., 296, which was an action in equity, both parties claimed title alone under the laws of the United States. Very many such cases might be cited. Nor is there anything unreasonable in this. In the adjudication of causes coming within their jurisdiction, the state courts are as much bound by the laws of the national government as by their own state laws. Indeed, where there is a conflict between the former and the latter, the latter must give way, as the former in such cases are paramount. State judicial officers are bound by their official oaths to observe the laws of the general government, and they do, as all must know, constantly construe and enforce them in the state tribunals; and the only restraint placed upon the state tribunals is by the twenty-fifth section of the judiciary act of congress, passed in 1789 (1 U. S. Statutes at Large, p. 85).

It is asserted by counsel that the national government cannot control the jurisdiction of the state courts by adding anything to them. This, of course, no one will presume to deny. But have not the circuit courts of this state always had jurisdiction of causes involving titles to property? And is it not their duty to pass upon such titles, by whatever laws derived? If congress pass any valid law affecting such titles, this certainly does not enlarge the jurisdiction of the state courts, but only furnishes a new rule of decision. In this way congress may add new questions of controversy to be adjudicated upon by the state courts. Do not the state laws do the same thing in the national courts? They are as much bound by the state laws, as far as valid, as the state courts are by the laws of the national government. But this, we apprehend, has nothing

to do in determining jurisdiction. Mr. Hamilton, upon the judiciary powers of the national government, said that, " the judiciary power of every government looks beyond its own local and municipal laws, and in civil cases lays hold of all subjects of litigation between parties within its jurisdiction, though the causes of dispute are relative to the laws of the most distant part of the globe.   Those of Japan, not less than those of New York, may furnish the objects of loyal discussion to our courts," etc. (see No. 82 Federalist.)   Mr. Dana, in V American Law Review, page 615, says:   As we have seen, if a state enlarges the landed rights of married women or aliens, the national courts are obliged to accept this practical increase of business and the new application of its process.   Such a state law does not alter their jurisdiction or control their process."

In the case before us the bankrupt law vested all the property of the bankrupts, Ward & Co., in the appellant, as fully as if they had conveyed it to him, and he alone is entitled to sue for the recovery thereof.   Bankrupt Law, secs. 14 and 16. Moreover, for the purpose of obtaining possession of the property of his bankrupts so vested in him, the assignee is armed with all the rights of the bankrupts' creditors, and may have the same remedies as the creditors might have had against the bankrupts previous to their bankruptcy.   *Bradshaw v. Kline*, 4 B. R., 146.   The appellant, therefore, thus invested with his bankrupts' property free from any fraudulent claim which the bankrupts may have created, and thus armed with all the rights of their creditors, having obtained service, might have enforced his claims in the national courts.   And why not also in the state courts ?   To say that his title comes through the bankrupt law is not to assert any principle of jurisdiction any more than to say that he has title under the preëmption or the homestead laws of the United States, were he claim-

ing under such laws. In cases where the title depends upon the laws of the United States, the state tribunals will adjudge according to those laws, subject, in certain cases to an appeal to the supreme court of the United States. In numerous cases the state courts do pass upon the validity of titles to property under such laws. Indeed, they cannot avoid so doing under the bankrupt laws of the United States, since a large portion of the property in the state has been transmitted through their agency. *King v. Morrison*, 5 Ark., 519; *State Bank v. Wilburn et al.*, 6 id., 35; *McCullough v. Caldwell*, 5 id., 237.

Again : the bankrupt law, by substituting the assignee for the bankrupt and clothing him with certain rights, does not, upon general principles, enlarge, diminish or change the jurisdiction of the state courts. This proposition is so clear as not to need a substantiation. Such courts have unquestionably the jurisdiction that they always had, which is to entertain suits brought by any person without regard to the character in which he sues, so he be competent to sue, and also to pass upon the titles of lands or other property, though acquired under the bankrupt or any other law, unless forbidden by the constitution of the United States or the laws made in pursuance thereof. But this is not forbidden in this case either by the constitution or by the bankrupt law, either expressly or by implication. As to the jurisdiction of the state and national courts, considered relatively to each other, the following, in brief, are the general principles laid down and recognized by the best authorities in the nation:

" The principles established in a former paper (No. 32) teach us that the states will retain all preëxisting authority which may not be exclusively delegated to the federal head; and that this exclusive delegation can only exist in one of these cases—when an exclusive authority is, in express terms;

granted to the Union, or when a particular authority is granted to the Union, and the exercise of a like authority is prohibited to the states; or when an authority is granted to the Union, with which a similar authority in the states would be utterly incompatible. Though these principles may not apply with the same force to the judiciary as to the legislative power, yet I am inclined to think that they are in the main just with respect to the former as well as the latter. And under this impression I should lay it down as a rule that the state courts will retain the jurisdiction they now have, unless it appears to be taken away in one of the enumerated modes." Federalist, No. 82. "But the doctrine of concurrent jurisdiction is only clearly applicable to those descriptions of causes of which the state courts have previous cognizance. It is not equally evident in relation to cases which may grow out of and be peculiar to the constitution to be established; for not to allow the state courts a right of jurisdiction in such cases can hardly be considered as the abridgment of a preëxisting authority. I mean not, therefore to contend that the United States, in the course of legislation upon the objects intrusted to their discretion, may not commit the decision of causes arising upon a particular regulation to the federal courts solely, if such a measure should be deemed expedient; but I hold that the state courts will be divested of no part of their primitive jurisdiction, further than may relate to an appeal; and I am even of opinion that in every case in which they were not expressly excluded by the future acts of the national legislature, they will of course take cognizance of the causes to which those acts may give birth. This I infer from the nature of judiciary power, and from the general genius of the system. * * When, in addition to this, we consider the state governments and the national governments, as they really are, in the light of kindred systems, and as parts of one

whole, the inference seems to be conclusive that the state courts would have a concurrent jurisdiction in all cases arising under the laws of the Union, when it was not expressly prohibited." *Id.*

After an extended consideration of this subject, Chancellor KENT said, " the conclusion then is, that in judicial matters the concurrent jurisdiction of the state tribunal depends altogether upon the pleasure of congress, and may be revoked or extinguished whenever they think proper, in every case in which the subject matter can constitutionally be made cognizable in the federal courts; and that, without an express provision to the contrary, the state courts will retain a concurrent jurisdiction in all cases where they had jurisdiction originally over the subject matter." 1 Kent Com., 400. Justice STORY said, in his commentaries on the constitution of the United States (2 Story on the Con., sec. 1754), " That there are some cases in which that power (the judicial power of the courts of the United States) is exclusive, cannot well be doubted; that there are others in which it may be made so by congress, admits of as little doubt; and that in other cases it is concurrent in the state courts, at least until congress shall have passed some act excluding the concurrent jurisdiction, will scarcely be denied.  *  *  And it is only in those cases where, previous to the constitution, state tribunals possessed jurisdiction independent of national authority, that they can now constitutionally exercise a concurrent jurisdiction." Also, in *Ward v. Mann*, in the supreme court of Massachusetts, it was adjudged, after an able consideration of the case, that if a case be within the ordinary jurisdiction of a state court, the court may take cognizance of it, though the cause of action arises under the rights acquired by a statute of the United States, provided there is no restriction under the constitution or the statute of the United States confining the jurisdiction

to the national courts. 1 Kent, 397, note; see also *Cohens v. Virginia*, 6 Wheat., 396; *Martin v. Hunter*, 1 id., 336; *Houston v. Moore*, 5 id., 49; *State v. Penney*, 10 Ark., 629. The practice of the general government has been uniformly conformable to these rules. When the congress of the United States intends to vest exclusive jurisdiction in the national courts, it is explicitly so provided in her legislation. Thus, in the judiciary act of congress of 1789, "The district courts shall have exclusively of the several states,   *   *   *   and shall also have exclusive cognizance of all civil causes of admirability and maritime jurisdiction." So, also, "that the district courts shall have, exclusively of the courts of the several states, cognizance of all causes," etc. 1 U. S. Stats. at Large, 76. The exclusive and concurrent jurisdiction conferred on the courts by the act just quoted were clearly distinguished and marked, and shows that in the opinion of congress a grant of jurisdiction generally was not of itself sufficient to vest an exclusive jurisdiction; and this doctrine has been acted upon by that body in her legislation upon those subjects down to the present time. Having said thus much in relation to the general rules as to the concurrent jurisdiction of the state courts in matters judicially cognizable by the national courts, we are prepared to consider more especially the authorities bearing upon the questions involved in this case.

One of the leading cases upon these questions is *Ward v. Jenkins*, 10 Met. (Mass.), 586. The supreme court of Massachusetts, in this case, decided that an assignee of a bankrupt, under the United States bankrupt law of 1841, might maintain an action in his own name in a state court for the breach of covenant made with the bankrupt. This decision, we believe, has never been seriously questioned since its delivery. See also *Hastings v. Fowler*, 2 Carter (Ind.), 216;

*Pindell v. Vimont,* 14 B. M., 322 ; *Comstock v. Grant,* 17 Vt., 515 ; *Delafield v. Illinois,* 26 Wend., 217 ; *Johnson v. Bishop,* 1 Woolw. C. C., 324 ; *Peiper v. Harmer,* 5 R. R., 252 ; *Bolander et al. v. Gentry,* 36 Cal., 105 ; *Hall v. Sewell,* 9 Gill., 146 ; *Porter v. Douglass,* 27 Miss., 379 ; *Stewart v. Hargrove,* 23 Ala., 429 ; *Peel et al. v. Ringgold et al.,* 6 Ark., 546. *In the matter of Reed,* 21 Vt., 643 ; *Hobart v. Haskall,* 14 N. H., 127 ; *Kittredge v. Warren,* id., 509 ; *Kittredge v. Emerson,* 15 id., 228. See also *Peck v. James et al.,* 7 How., 625, where it was expressly held that the jurisdiction of the national courts in the matters of bankruptcy was not exclusive.

See also the following cases recently decided : *Stevens v. Mechanics' Saving Bank,* 101 Mass., 109 ; *Forbes v. Howe,* 102 id., 427 ; *Mays v. Manufacturers' Bank,* 64 Penn., 74 ; *Boone v. Hall,* 7 Bush (Ky), 66 ; *Gilbert v. Priest,* 8 Bank. Reg., 159 ; *In re Central Bank,* 6 id., 207, and *Paine v. Caldwell,* id., 566. In the last mentioned but one of these cases an application was made to Judge BLATCHFORD to enjoin proceedings by an assignee in a state court.

The judge said : "The application is based upon the ground that the state tribunals are without jurisdiction to entertain such an action as the one referred to. I do not so understand the law. The provision of the second chapter of the bankrupt act does indeed confer upon the district and circuit courts jurisdiction of certain actions ; but I have never supposed the effect of that section to be to oust the jurisdiction of the state courts."

In *Paine v. Caldwell,* 6 B. R., 566, an assignee in bankruptcy had sued a nonresident, which is the case here, in the United States district court of Maine, and the court having discovered that said district court could not obtain jurisdiction, in consequence of the inability of obtaining service upon the defendants under the bankrupt law, said : "It is

argued that, if the district court does not possess this power and authority, an assignee is without remedy to enforce his claims in behalf of the estate against nonresidents of his district and not found therein, but such, I apprehend, will not prove to be the case, as it is shown that the state courts are ready to exercise jurisdiction over their own citizens in suits against them in behalf of assignees in bankruptcy."

From the foregoing, our conclusion under this head is as follows: The state courts not being prohibited expressly by the constitution or laws, or bankrupt law of the United States, nor by implication therefrom forbidden to take cognizance of causes like the one at bar, we are clearly of opinion that such courts have concurrent jurisdiction of such causes with the national courts. We will now more explicitly notice some of the objections urged by the appellee's counsel to this suit as instituted in the court below. It is said that the United States district court has complete control of the bankrupt's property, etc. Very true. But is there anything in this inconsistent with the jurisdiction of the state courts in cases like this? It has been admitted that an action by the assignee to recover a debt due the bankrupt, or to recover property belonging to the bankrupt, or to set aside a conveyance void under the statute of fraud and perjuries, or any other cause of action arising under rights acquired by the statute or common law of Arkansas, might be brought in the state courts. Has not the district court control of the property in these cases as well as of the property in cases like the one before us? If the objection applies to this, why not to all? Surely, if the district court has such control of a case like the one before us, when the title to the property depends entirely upon the bankrupt law, so as to make its jurisdiction exclusive, its control must operate in like manner in all cases. *McLean v. La Fayette Bank*, 3 McLean, 184, has been relied

upon as proving that the state courts have no jurisdiction in this case. This is one of the first cases under the law of 1841, and contains several propositions which will not be contended for. But, nevertheless, the judge said: " On general principles a state court has an undoubted right to determine a question arising under the laws of the United States." The fact is that the matter decided in *McLean v. La Fayette Bank*, is not against the position assumed in this case. It was a suit against an assignee in a state court to enforce certain liens, and the court merely held that the parties claiming the liens must bring their claims into the district court where the fund was and where it was to be distributed. This is essential in relation to all claims against a fund in court. Even a judgment in the circuit court previous to the abolishment of the probate courts could not be enforced against an administrator, but it had to be taken to the probate court where the fund remained for distribution, though the administrator might have enforced his rights in any court having jurisdiction of the subject matter of his demand.

*In re Wynn*, 4 B. R., 5, is precisely a similar case to the above. *In re Burrow*, 1 id., 125, the court merely decided that the court of bankruptcy could order a sale free from all liens. *Ex parte Christy*, 3 How., 272, upon which appellee's counsel seems chiefly to rely, has nothing in it so far as we can discover, denying that the jurisdiction of suits by assignees can be entertained by the state courts. It merely decides that the district courts have plenary jurisdiction in marshaling the assets of the bankrupt and paying off all liens against the fund in the hands of the assignee which is administered in that court. The case of *Van Norstrand v. Barr*, 2 S. R., 154, only decided that the bankrupt law suspended the operation of all state insolvent laws; and this was not a new question in this case, for it had been decided before in the

case of *Sturgis v. Crowninshield*, 4 Wheat., 122., *In re Longley*, 1 B. R., 155, substantially decided the same thing.

That after an adjudication in bankruptcy, all claimants holding liens against the estate of the bankrupt must go into the bankrupt courts where the fund is, so that everything pertaining to the marshaling of the assets may be considered at the same time, is a doctrine well settled. But this certainly does not prevent the assignee bringing his suit in any court, state or national, for the purpose of enforcing his rights to property belonging to him as assignee. Just the same is this as in claims against an administrator or guardian, which must be taken to the court having control of the funds of the estate for classification and allowance. And this does not prevent such administrator or guardian from suing in any court having jurisdiction of the subject matter of the suit, and the same may be said of a receiver in chancery. Neither the cases cited by appellee's counsel, nor any other, with one solitary exception, we have been able to find, have decided or held that an assignee may not go into a state court to assert his title to property against any one, the same as an administrator or a guardian. The exception referred to is *Voorhees, Assignee, etc. v. Frisbie et al.* (see Am. Law Reg., vol. 12, No. 2, p. 108), decided recently by the supreme court of Michigan, and is supported neither by authority nor reason. The cases cited by appellee's counsel are usually those of claims against an assignee, and we have been able to discover no conflict between them and the very many cases that favor the jurisdiction of the state tribunals in cases like the one at bar, save the Michigan case just referred to, from all of which we not only infer but conclude that it was most emphatically the duty of the court below to assume jurisdiction of and to try this case.

We are therefore of opinion that the court below erred in

dismissing this case for want of jurisdiction ; and for this error the decree must be reversed and the cause remanded, with instructions to the court below to overrule the motion to dismiss, and further proceed according to law and not inconsistently with this opinion.